**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **FRANCILLA TAYLOR BETTS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 08-0502-CG-C** |
| | ) | |
| | ) | |
| **THE POLLARD AGENCY, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

This matter is before the court on defendant's motion for summary judgment (Doc. 23), plaintiff's opposition thereto (Doc. 29), and defendant's reply (Doc. 31). The court finds that defendant proffered legitimate nondiscriminatory reasons for promoting another employee to the position of Lieutenant at the L-P job site, instead of plaintiff, and that plaintiff has failed to show that those legitimate reasons are unworthy of credence or that race and/or gender was a determinative factor in the defendant's decision. Therefore, defendant's motion for summary judgment is due to be granted.

**<u>FACTS</u>**

This case was filed by plaintiff, Francilla Taylor Betts, asserting violations of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981. (Doc. 1). Plaintiff is an African American female who contends that defendant intentionally discriminated against her on the basis of her race and/or gender. Specifically, the complaint alleges that defendant, as her employer

1

discriminated against her by promoting a white male with less experience than plaintiff to a vacant Lieutenant position.  Defendant denies it discriminated against plaintiff and asserts that plaintiff did not express interest in the publicly advertised position and that it hired a qualified candidate for legitimate non-discriminatory reasons.  Additionally, defendant contends that plaintiff's damages, if any, are limited to the duration of the position in question, which ended when the job site was shut down.

The defendant provides industrial security throughout the southeast and is headed up by Bruce Pollard, as the Owner and CEO. (Brock Pollard Dep. p. 12).  His son, Brock Pollard, serves as Vice President. (Brock Pollard Dep. p. 12).  During the relevant time period, defendant provided security at several industrial job sites in Alabama, including a 200 acre job site at the Alabama River Pulp Mill ("ARP"), located in Monroeville, Alabama. (Brock Pollard Dep. pp. 19-20, 66).  The plaintiff was hired as a Security Officer at the ARP job site, making $6.50 per hour, on July 20, 2003. (Betts Dep. p. 58; Brock Pollard Dep. 129).  Plaintiff received raises on January 4, 2004, on August 5, 2007, and on July 27, 2008, and is currently working as a Security Officer at the ARP location, making $9.00 per hour. (Betts Dep. pp. 62-64).

In early March 2007, a representative of the Louisiana-Pacific ("L-P") facility located in Thomasville, Alabama, contacted defendant to see if it was interested in doing business with L-P. (Bruce Pollard Dep. pp. 21-22; Brock Pollard Dep. pp. 36-38).  Bruce and Brock Pollard met with L-P to discuss providing security services during the construction of the new facility. (Brock Pollard Dep. pp. 29-31, 37-38; Bruce Pollard Dep. pp. 22-25).  Defendant contracted with L-P to provide security for the construction which lasted about a year. (Brock Pollard Dep. pp. 29-31, 47).  Plaintiff testified that the L-P job site was about 45-50 miles from Monroeville,

but stated that she lives in Clarke County, Alabama, and that she was willing to the drive 30-45

minutes it would take to her to get to the L-P job site. (Betts Pollard Dep. pp. 67, 124-125).

According to Bruce Pollard, defendant requested a month to get everything set up to take the

time to hire and screen employees and make other arrangements for the job. (Bruce Dep. pp., 22-

25).  As soon as defendant and L-P had a deal with L-P, Brock Pollard got in touch with the

Alabama Career Center System and arranged to place a job order with Career Center located in

Jackson, Alabama (Brock Pollard Dep. pp. 51-52, 102-104).   Brock Pollard testified that soon

thereafter, a representative from L-P notified defendant that L-P was "fed up with" its current

security service and was kicking them off the job site and needed defendant to provide security

services beginning Monday morning, March 26, 2007, at 6 a.m. (Brock Pollard Dep. pp. 34, 39-

41).  Bruce Pollard signed a contract with L-P on March 24, 2007, and an L-P representative

signed the contract on March 26, 2007. (Doc. 28-41).   On Saturday, March 24, 2007, Bruce

Pollard and Brock Pollard drove to Thomasville, Alabama, and set up in the local Holiday Inn

Express to begin interviewing applicants for site supervision and security officer positions who

had responded to the Alabama Career Center job order. (Brock Pollard Dep. p. 41; Bruce Pollard

Dep. pp. 25-26; Sims Dep. p. 38).   The job description given for the Lieutenant position stated

the following:

> Will supervise security officers in their duties of monitoring, patrolling, and
> securing premises. Work located in Grove Hill/Thomasville area. Drug screen and
> background check required. Prior management or supervisory experience a plus.

(Doc. 23-6 - Brock Pollard Dep. Ex. 2).   Brock Pollard also promptly placed an ad in the

Thomasville Times that would run later that week. (Brock Pollard Dep. pp. 43-44, 52, 100-102,

Ex. 1; Bruce Pollard Dep. pp. 26-27).  The job description in the Thomasville Times stated the

following:

> HELP WANTED - Security Officers/Security Manager.  Full-time positions
> available. Must pass drug test and crimal(sic) records check. Must be 21 years of
> age. Starting pay - $7.50-9/hour. EEOE. Call 1-800-635-8632 ext 244. TT 3/22-
> 4/5p

(Doc. 23-6 - Brock Pollard Dep. Ex. 1).  Defendant did not post the L-P Lieutenant job opening at ARP or at any other of its job sites. (Brock Pollard Dep. pp. 43-44; Bruce Pollard Dep. p. 29).

One of the applicants they interviewed the first weekend was Thomas Fox, who had recently been laid off from a supervisor position with the Clarke County Sheriff's Department. (Brock Pollard Dep. pp. 52, 73-77; Bruce Pollard Dep. p. 26).  Thomas Fox applied for the position in response to the Alabama Career Center Job order. (Brock Pollard Dep. pp. 51-52, 105; Sims Decl. ¶ 4).  Thomas Fox is an African-American male. (Brock Pollard Dep. 45). Bruce and Brock Pollard reportedly hired Thomas Fox, who had 14 years of experience including supervisory experience working with the Sheriff's Department,  for the Lieutenant position. (Brock Pollard Dep. pp. 45, 73-77; Bruce Pollard Dep. pp. 28-29).  They continued to interview candidates for positions at L-P over the next two weeks. (Brock Pollard Dep. pp. 43, 81-82).

However, Thomas Fox did not show up for work on Monday. (Bruce Pollard Dep. p. 36; Brock Pollard Dep. pp. 48-51, 53; Sims Dep. pp. 27, 39).  Brock Pollard called Lieutenant Darlene Ward at ARP in Monroeville to see who might be available for temporary assignment to help out with the start up at L-P on Monday, March 26. (Brock Pollard Dep. pp. 55-57; Bruce Pollard Dep. pp. 39-40; Ward Decl. ¶ 9).  Ms. Ward informed him that Security Officer Carlton Collins was not scheduled to work at ARP on Monday and that Sergeant Erma Ware was also available and gave him their phone numbers so he could call them. (Brock Pollard Dep. p. 58;

4

Ward Decl. ¶ 10).  Brock Pollard called Carlton Collins at home to see if he would be willing to temporarily help out at the L-P site in Thomasville and Collins agreed to do so. (Brock Pollard Dep. pp. 61-62; Collins Decl. ¶¶ 5-7).  Brock Pollard also called Erma Ware and she said she would be able to come over and help out. (Brock Pollard Dep. p. 61; Ward Dep. pp. 33-34, 51).  Plaintiff was scheduled to work at ARP on Monday, March 26. (Ward Decl. ¶ 11).  Erma Ware worked the night shift on the main gate at L-P on Monday March 26 through Wednesday March 28. (Ware Dep. p. 23; Ward Decl. ¶ 12; Bruce Pollard Dep. p. 40).  Carlton Collins worked the day shift at the construction gate those same three days. (Ware Dep. pp. 22-23; Collins Decl. ¶ 8; Ward Decl. ¶ 13).  Collins continued to work at L-P the following week ending April 7, 2007. (Collins Decl. ¶ 9; Ward Decl. ¶ 14).  Collins was aware that the company was looking for a site supervisor and approached Brock Pollard and asked if he would consider him for the position of Lieutenant. (Collins Dep. ¶ 10; Brock Pollard Dep. pp. 88-89; Bruce Pollard Dep. p. 49).  Collins told Brock Pollard that he had worked as a supervisor for Nyco Security at Providence Hospital in Mobile, Alabama, for about a year. (Collins Decl. ¶ 12; Brock Pollard Dep. pp. 91-92; 174-75).  Collins had been hired as a security guard at the ARP site in January 2007. (Betts Dep. p. 68; Collins Decl. ¶ 4).  Brock Pollard told Collins that he would take his request under consideration and would get back with him, but did not offer him the position at that time. (Brock Pollard Dep. p. 89; Collins Decl. ¶ 11).  Brock Pollard then discussed the possibility of having Collins as a supervisor with Bruce Pollard, who initially expressed some reservations about his experience. (Brock Pollard Dep. p. 89; Bruce Pollard Dep. pp. 51-54, 57, 60-61).  Although a schedule for the new L-P indicates that Collins was working in the position of Lieutenant at L-P (according to the handwritten schedule Collins only worked at L-P the last day

5

of that week, Saturday, April 7, 2007), Bruce Pollard states that he continued to interview other applicants for the position but was not finding any good candidates. (Plaintiff's Ex. 10 Bruce Pollard Dep. p. 51).   According to Brock Pollard, he contacted Providence Hospital to speak to the Nyko Security Manager to verify the information concerning Collins, but was unable to do so because Nyco was no longer in business. (Brock Pollard Dep. pp. 92-93; Bruce Pollard Dep. p. 53). Collins asked about the job again when he came back the second week, and defendants report that they hired Collins for the position based on his prior supervisory experience, his experience, and the immediate need for site supervision. (Bruce Pollard Dep. pp. 51-54, 57, 60-61; Brock Pollard Dep. pp. 88, 93, 139).   Collin's new rate of pay was $8.50 per hour, effective April 8, 2007. (Brock Pollard Dep. pp. 120, 139, Collins Decl. ¶ 13).  Defendant did not consider plaintiff for the L-P Lieutenant position. (Brock Pollard Dep. 138, 163-164).

Effective February 29, 2008, Collins transferred back to the ARP job site as a part time Security Officer, when construction ended at L-P and his rate of pay was reduced to $8.00. (Collins Decl. ¶¶ 15-17; Brock Pollard Dep. p. 121).  Plaintiff was also earning $8.00 per hour in February 2008. (Betts Dep. p. 63; Brock Pollard Dep. p. 133).  At the end of May 2008, Collins began working full time as a Security Officer at ARP. (Collins Decl. ¶ 18). Both plaintiff and Collins received raises in July 2008 to $9.00 per hour. (Betts Dep. p. 63; Brock Pollard Dep. pp. 131-132).

Plaintiff states that she also had supervisory experience but that she was never asked by anyone whether or not she had any supervisory experience. (Betts Dep. pp. 124-125).  The application plaintiff submitted when she was originally hired by defendant does not list any supervisory experience. (Doc. 28-12, Betts application for employment - dated 05/14/03).

Plaintiff also states that she lived closer to the new L-P site than Collins did and that she would have been willing to drive to Thomasville. (Betts Dep. pp. 124-125). Plaintiff knew that defendant had contacted some of the ARP employees to work at the L-P site but states that she did not know of the new Lieutenant position at the L-P site until after she learned that Collins had been promoted. (Betts. Dep. p. 71; Betts Decl. ¶ 2). According to plaintiff, in October 2004, she had expressed an interest in being promoted to Brock Pollard in the past. (Betts. Decl. ¶ 3).

## DISCUSSION

### A. Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted: "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The trial court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). "The mere existence of some evidence to support the non-moving party is not sufficient for denial of summary judgment; there must be 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" Bailey v. Allgas, Inc., 284 F.3d 1237, 1243 (11th Cir. 2002) (quoting Anderson, 477 U.S. at 249). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, at 249-250. (internal citations omitted).

The basic issue before the Court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." See Anderson, 477 U.S. at 251-252.

The moving party bears the burden of proving that no genuine issue of material fact exists. O'Ferrell v. United States, 253 F.3d 1257, 1265 (11th Cir. 2001).  In evaluating the argument of the moving party, the court must view all evidence in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in its favor. Burton v. City of Belle Glade, 178 F.3d 1175, 1187 (11th Cir.1999).   "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." Miranda v. B&B Cash Grocery Store, Inc., 975 F.2d 1518, 1534 (11th Cir. 1992) (citing Mercantile Bank & Trust v. Fidelity & Deposit Co., 750 F.2d 838, 841 (11th Cir. 1985)).

Once the movant satisfies his initial burden under Rule 56(c), the non-moving party "must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." Howard v. BP Oil Company, 32 F.3d 520, 524 (11th Cir.1994)(citing Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)).  Otherwise stated, the non-movant must "demonstrate that there is indeed a material issue of fact that precludes summary judgment."  See Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).  The non-moving party "may not rest on the mere allegations or denials of the [non-moving] party's pleading, but .... must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e)  "A mere 'scintilla' of evidence supporting the [non-moving] party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party."  Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990) (citation omitted). "[T]he nonmoving party may avail itself of all facts and justifiable inferences in the record taken as a whole." Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998 (11th Cir. 1992).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial."  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 at 587 (1986) (internal quotation and citation omitted).


**B. Discrimination Claims**

Plaintiff asserts that defendant intentionally discriminated against her on the basis of her race and/or gender by promoting a white male with less experience than plaintiff to the Lieutenant position at the L-P job site.  A plaintiff may prove discrimination by relying on either direct, circumstantial, or statistical evidence.  See Walker v. NationsBank of Florida N.A., 53 F.3d 1548, 1555 (11th Cir. 1995).   Direct evidence is evidence which, "if believed, proves the existence of discriminatory motive 'without inference or presumption'" Hamilton v. Montgomery County Bd. of Educ., 122 F.Supp.2d 1273, 1279 (M.D. Ala. 2000) (quoting Carter v. Three Springs Residential Treatment, 132 F.3d 635, 641 (11th Cir. 1998)).  As the District Court for the Middle District of Alabama explained:

> Not only must it be evidence of discriminatory 'actions or statements of an employer' but the actions or statements at issue must 'correlat[e] to the discrimination or retaliation complained of by the employee.' Further, the statements 'must be made by a person involved in the challenged decision' and must not be subject to varying reasonable interpretations.

Id. (quoting Lane v. Ogden Entertainment, Inc., 13 F.Supp.2d 1261, 1274 (M.D. Ala. 1998)). The court finds that none of the evidence submitted by plaintiff qualifies as direct evidence of discrimination.  None of the evidence offered proves without inference or presumption that the persons who made the employment decisions did so as a result of a discriminatory motive.

Plaintiff may attempt to show discrimination based on circumstantial evidence through the application of the McDonnell Douglas burden-shifting analysis established by the Supreme Court.[1] McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  Under the McDonnell Douglas framework, a plaintiff must first raise an inference of discrimination by establishing a prima facie case. See Chapman v. AI Transport, 229 F.3d 1012, 1024 (11th Cir. 2000) (citing Combs v. Plantation Patterns, 106 F.3d 1519, 1527-28 (11th Cir.1997)).  To establish a prima facie case a plaintiff must show:

---

[1] The same McDonnell Douglas analysis applies to both Title VII and § 1981 claims. See Alexander v. Fulton County, Ga., 207 F.3d 1303, 1314 n. 6 (11th Cir.2000).  Therefore, the court will discuss plaintiff's Title VII and § 1981 claims together.

(1) that [s]he is a member of a protected class;

(2) that [s]he was qualified for and applied for the promotion;

(3) that [s]he was rejected;  and

(4) that other equally or less qualified employees who were not members of the protected class were promoted.

Denney v. City of Albany, 247 F.3d 1172, 1183 (11th Cir. 2001) (citing Combs, 106 F.3d at 1539 n. 11).  It is undisputed that plaintiff as a female and as an African American is a member of a protected class.  Plaintiff has also presented evidence that she was qualified for the position[2] and that a less qualified white male employee was promoted.  However, defendant denies that plaintiff applied for the promotion and asserts that defendant did not reject plaintiff or choose another employee over her, but simply did not consider her for the position.  Plaintiff contends that she did not receive proper notice that the Lieutenant position was available.

According to defendant, it treats each job site separately and it followed its normal practices when it placed an ad for the position with the Alabama Career Center and with the local newspaper.  In fact, defendant contends that the issue in this case is not whether it discriminated against plaintiff when it failed to promote her, but whether it discriminated against her by not hiring plaintiff.  Defendant argues that the L-P job site was about 50 miles away from the ARP job site and that it was looking to hire new employees for the L-P facility.  Plaintiff did not answer the ads or communicate to defendant that she wanted to be considered for a position at the L-P job site.  Plaintiff disagrees, she argues that she had expressed an interest in being promoted and cites cases that have held that a plaintiff is generally excused from the requirement

---

[2] Although defendant asserts that it had no knowledge of plaintiff's reported supervisory experience, such arguments are more appropriately considered later in the McDonnell Douglas analysis in relation to whether defendant had a legitimate reason for its decision to promote someone other than plaintiff.  The court notes that the position in question did not necessarily even require supervisory experience, although such experience would have been considered a plus.  Looking at the evidence in the light most favorable to plaintiff, the court finds that there is sufficient evidence for a jury to find that plaintiff was qualified for the position.

of applying for a position when the opening was not reasonably communicated to the plaintiff. See e.g. Mauro v. Southern New England Telecomms., Inc., 208 F.3d 384 (2d Cir. 2000); Dews v. A.B. Dick Co., 231 F.3d 1016 (6th Cir. 2000); Abrams v. Baylor College of Med., 581 F.Supp. 1570 (S.D. Tex. 1984), aff'd in part and rev'd and remanded in part on other grounds, 805 F.2d 528 (5th Cir. 1986).

The Eleventh Circuit has held that under certain circumstances a plaintiff need not have applied for a position to assert a prima facie case of discrimination for not having been promoted. Carmichael v. Birmingham Saw Works, 738 F.2d 1126 (11th Cir.1 984).   In Carmichael v. Birmingham Saw Works, 738 F.2d 1126 (11th Cir. 1984), an African American employee alleged that his employer discriminated against him by not promoting him for certain jobs because of his race.  The Court held that although the plaintiff did not apply for the job in question "the plaintiff was not required to ask for that specific job, because he had no way of knowing about its availability." Id. at 1132.  In Carmichael, the defendant "used no formal procedures for posting notice of available promotions or for determining who would be offered the promotion." Id. at 1133.  "Instead, the company relied on 'word of mouth' and informal review procedures." Id.  The court stated "that such subjective procedures can lead to racial discrimination, both because important information may be available only to whites and because such procedures place no check on individual biases." Id. (citations omitted).  The Court found that "[t]he failure to establish fixed or reasonably objective standards and procedures for hiring is a discriminatory practice" Id. (citations and internal quotations omitted).  The Court further stated that requiring that a plaintiff "demonstrate an explicit expression of interest in specific jobs would also be at odds with the purposes of the prima facie case in analyzing evidence." Id.

> Accordingly, a plaintiff makes out a prima facie case-that is, he creates a presumption of discrimination and forces the employer to articulate legitimate reasons for his rejection-as long as he establishes that the company had some reason or duty to consider him for the post. The employer cannot avoid a Title VII violation by showing that it incorrectly assumed that the plaintiff was uninterested in the job. When the plaintiff had no notice of or opportunity to apply for the job, such a reason for rejection is "legally insufficient and illegitimate". Harris, 712

11

F.2d at 1383-84.

Id. at 1133-1134.  The Carmichael Court found that it was "a disputable question of fact whether the defendant had any reason to think the plaintiff was interested in [the position in question.]" Id. at 1134.  In Carmichael, a "reason" arose from the fact that the plaintiff had expressed a general interest in obtaining a promotion within the company.

In the instant case, plaintiff contends that she had expressed a general interest in promotion, however the means used by defendant to solicit applicants for the position are not comparable to the "informal secretive selection process" criticized in Carmichael.  Since Carmichael, the Eleventh Circuit has further explained that expressing a  "general interest ... is not enough ... when the defendant-employer has publicized an open position." Smith v. J. Smith Lanier & Co., 352 F.3d 1342, 1345 (11th Cir. 2003).  In Smith, the Eleventh Circuit held that where a plaintiff knows about the availability of positions but chooses not to formally apply, Carmichael is inapplicable. Id.  Carmichael did not apply because the positions were posted, the plaintiff knew about the positions, and chose not to apply. Id.; see also Williams v. Giant Food, Inc., 370 F.3d 423, 430 (4th Cir. 2004) (applying Smith in a failure to promote case).  In the instant case, the positions were posted and plaintiff had some knowledge of the new job site since she knew that some of the ARP employees were being pulled to work the new site. Plaintiff knew that there were openings at the new site and did not formally apply for or express any interest in working at the new site.  However, plaintiff contends that she did not know of the new Lieutenant position.  The court notes that it does not appear that plaintiff needed to submit a formal application for the position since the evidence suggests that the formal application procedure was not followed with regard to Collins, who expressed interest in the job, but presumably did not answer the ads or formally apply for the position.  After reviewing decisions by other courts that have considered somewhat similar facts, the court finds that since the plaintiff expressed a general interest in promotion to one of the decision makers and there is evidence that a formal application was not required, that there remains a factual dispute as to

whether plaintiff sufficiently applied for the position. See Gremillion v. Walgreen Co., Inc., 2006 WL 1794745 (M.D. Ala. June 28, 2006) (finding there was a factual dispute as to whether plaintiff applied for the position where plaintiff had not submitted a formal application but expressed an interest in the position and the evidence indicated that the formal on-line application procedure was not considered a prerequisite by the employer); see also Freeman v. Walgreen Co., Inc., 2006 WL 229869 (M.D. Ala. January 31, 2006) (discussing Carmichael and Smith supra and finding no prima facie case where the person selected for the position at issue submitted a formal application and the plaintiff testified that she knew a new store was opening and that there would be open positions there.).

Once plaintiff establishes a prima facie case, the burden shifts to the defendant, who must "proffer a legitimate, non-discriminatory reason for the adverse employment action.  The employer's burden is exceedingly light." Hamilton, 122 F.Supp.2d at 1280 (quoting Meeks v. Computer Assocs. Int'l, 15 F.3d 1013, 1021 (11th Cir. 1994) (internal quotations omitted)).  If the defendant proffers a legitimate reason for the employment decisions, the burden then shifts back to plaintiff, who must show that the employer's proffered reasons are pretextual, or merely a cover for discrimination. Id.   "At the pretext stage, in order to survive summary judgment, Plaintiff must provide sufficient evidence to allow a reasonable fact finder to conclude, at a minimum, that the proffered reasons were not actually the motivation for the employer's decision." Miller v. Bed, Bath & Beyond, Inc., 185 F.Supp.2d 1253, 1270 (N.D. Ala. 2002) (citing Combs, 106 F.3d at 1538.  Plaintiff may do this  "(1) by showing that the employer's legitimate nondiscriminatory reasons should not be believed; or (2) by showing that, in light of all of the evidence, a discriminatory reason more likely motivated the decision." Id. (citations omitted).  "This is done by pointing to 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons . . . that a reasonable factfinder could find them unworthy of credence.'" Hamilton, 122 F. Supp.2d at 1281 (quoting Combs, 106 F.3d at 1539).  The ultimate burden of persuasion remains with the plaintiff

at all times in cases involving merely circumstantial evidence. <u>Texas Dept. of Community Affairs v. Burdine</u>, 450 U.S. 248, 253 (1981).

In satisfying the ultimate burden of proving that the failure to promote was on account of race or gender, a plaintiff need not establish that race or gender was the sole reason for the action, but that race and/or gender was a determinative factor in the employer's decision. <u>See Anderson v. Savage Laboratories, Inc.</u>, 675 F.2d 1221, 1224 (11th Cir. 1982) (citing <u>Haring v. CPC International, Inc.</u>, 664 F.2d 1234, 1239-40 (5th Cir. 1981)).  However, it should be noted that federal courts "do not sit as a super-personnel department that reexamines an entity's business decisions." <u>Chapman</u>, 229 F.3d at 1030 (quoting <u>Elrod v. Sears, Roebuck & Co.</u>, 939 F.2d 1466, 1470 (11th Cir. 1991)).  It is not appropriate for either the plaintiff or this court to "recast an employer's proffered nondiscriminatory reasons or substitute his business judgment for that of the employer." <u>Chapman</u>, 229 F.3d at 1030.

In this case, defendant has proffered non-discriminatory reasons for its failure to consider plaintiff for the Lieutenant position at the L-P job site and to instead promote Collins to that position.  Collins was chosen to fill in at the L-P site initially simply because he was available to work the first day and defendant had an immediate need for workers.  Later, defendants promoted or hired Collins for the Lieutenant position because he had already been working at the job site and had done a fine job, he had expressed an interest in getting the position, and had reported that he had supervisory experience.  According to defendant, it did not consider plaintiff for the position because she had not expressed an interest in working at any position at the new site which is approximately 50 miles away from her current job site and she did not have any supervisory experience as far as defendant knew.   Defendant has clearly met its burden of proffering a legitimate, non-discriminatory reason for promoting Collins, instead of plaintiff, to the position.

The court also finds that plaintiff has not demonstrated that defendant's proffered reasons are merely pretext.  Plaintiff points out discrepancies between defendant's proffered reasons for

14

hiring Collins when plaintiff filed her EEOC complaint and the reasons proffered now for

promoting Collins.  Defendant told the EEOC that plaintiff was not considered because the

position required prior site supervisory experience.  Later, in answer to plaintiff's first discovery

request, defendant stated the following:

> Defendant identified and selected individuals for promotion to Lieutenant for
> each occasion identified in Interrogatory No. 3 based on prior supervisory
> experience and familiarity with the jobsite.  Plaintiff was not considered for
> promotion to Lieutenant on any occasion identified in Interrogatory No. 3 because
> of lack of prior supervisory experience.

(Doc. 28-39).  As stated above, defendant now asserts that defendant promoted Collins because

he had already been working at the job site, had expressed an interest in getting the position, and

he had supervisory experience.  Defendant asserts that it did not consider plaintiff because she

had not expressed an interest in working at the new site and she did not have any supervisory

experience as far as defendant knew.  After reviewing defendant's stated reasons, the court does

not find any inconsistency in defendant's rationales.  Although defendant originally stated that

the position "required supervisory experience" and later stated that supervisory experience was

preferred or was a plus, the court does not find such semantics to be significant.  As the

proceedings have progressed, defendant has continued to elaborate or explain its reasons for

putting Collins in the L-P position and the court does not find the refinements pointed to by

plaintiff demonstrate pretext. See Standard v. A.B.E.L. Services, Inc., 161 F.3d 1318, 1332 (11th

Cir.1998) (stating that employer's "later elaboration ... of a general reason is insufficient to show

pretext").  That defendant's wording of its explanation is not precisely identical in every instance

does not show pretext. Id.

Plaintiff also appears to argue that Collins was not a better candidate than her because

supervisory experience was not a prerequisite for the position.  Plaintiff points out that the

Alabama Career Center ad and the local newspaper ad for the position did not state that

supervisory experience was required.  However, the Career Center ad stated that the position

would require the person to supervise security officers and added that prior management or

15

supervisory experience was a plus.  The newspaper ad did not describe the job duties in any detail but appears to seek applicants for both non supervisory - Security Officer - positions as well as for a management position.  Both ads are consistent with plaintiff's contention that supervisory experience was preferred for the Lieutenant position.  While plaintiff contends that it was never confirmed that Collins had supervisory experience, the undisputed evidence is that Collins told defendant that he had supervisory experience.  Defendant attempted to verify Collins' work experience but was unable to do so because his previous employer was no longer in business.  Defendant's reliance on Collin's statements does not appear unreasonable given the time pressures defendant was under to fill the position and the fact that defendant had no reason to believe Collins was lying about his experience.

Plaintiff also asserts that Collins should not have been chosen over her because she also has supervisory experience.  However, it is undisputed that defendant had no knowledge of plaintiff's claimed prior experience.  In fact, defendant had reason to believe that plaintiff did not have prior supervisory experience because the application she submitted when she was originally hired by defendant does not list any supervisory experience.[3]

Plaintiff also points out that the handwritten weekly schedule identified Collins as a Lieutenant when he worked at the end of the second week (Saturday, April 7, 2007), although defendant stated that they continued to interview for the position during that week.  However, defendant points out that this document has not been authenticated.  Moreover, defendant did not specify precisely which days they interviewed or state that they interviewed beyond Friday of that week.  The document is not inconsistent with defendant's testimony that it continued to interview the second week.  Additionally, there is no evidence regarding when the handwritten document was created or filled out.  Collins' promotion reportedly became effective the very next day, Sunday, April 8, 2007.

-------------

[3] The court notes that the previous job in which plaintiff contends she had supervisory duties was not listed on her job application at all.

Plaintiff also states that she lived closer to the new L-P site than Collins did and that she would have been willing to drive to Thomasville.  However, there has been no evidence pointed to that suggests that the decision makers were aware that plaintiff lived closer than Collins.  The new site was a significant distance from the ARP job site and the court does not find it unreasonable for the defendant to expect to hire new employees for the new locality.  Defendant did not know that plaintiff would want the L-P position and did not compare the distance from plaintiff's residence to the L-P site with the distance from Collins' residence to the L-P site before deciding to promote Collins.

Plaintiff also argues that Collins' familiarity with the L-P site and its special orders was not a good reason to promote him because Collins only worked at L-P for a few days and the procedures were simpler at L-P than at ARP.  Plaintiff contends that whatever familiarity Collins gained in those three days she could have also learned in three days.  Assuming that to be the case, the court does not find that plaintiff's contentions demonstrate pretext.  Collins' experience at the L-P job site, as short as it was, was more than plaintiff possessed.  Plaintiff has not shown that it was unreasonable to consider Collins' familiarity with the job site.

Although plaintiff questions the wisdom of defendant's choice, plaintiff has not shown that any of the legitimate reasons proffered by defendant for promoting Collins are unworthy of credence.  As previously stated, the court will not sit as a super-personnel department that reexamines an entity's business decisions or substitute the court's business judgment for that of the employer.  Pretext cannot be demonstrated by examining every detail of the employer's actions with hindsight to determine the one precise path or plan that should have been followed. The court finds that plaintiff has failed to show that defendant's proffered legitimate non-discriminatory reason for promoting Collins to the Lieutenant position at the L-P job site are pretextual.

## CONCLUSION

17

For the reasons stated above, defendant's motion for summary judgment (Doc. 23) is **GRANTED**.

**DONE and ORDERED** this 6th day of November, 2009.

/s/ Callie V. S. Granade
CHIEF UNITED STATES DISTRICT JUDGE

18